UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**KEITH LOPRESTO**  CASE NO. 6:22-CV-05229

**VERSUS**  JUDGE ROBERT R. SUMMERHAYS

**KILOLO KIJAKAZI**  MAGISTRATE JUDGE CAROL B. WHITEHURST

**REPORT AND RECOMMENDATION**

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be affirmed.

**Administrative Proceedings**

Claimant, Keith Lopresto, fully exhausted his administrative remedies before filing this action in federal court. He filed an application for disability insurance benefits and an application for supplemental security income (SSI) benefits, alleging disability beginning on May 21, 2015. His applications were denied. He then requested a hearing, which was held on November 3, 2021, before Administrative Law Judge Robert Grant. (Rec. Doc. 9-1, p. 34-69). The ALJ issued a decision on November 15, 2021, concluding that Claimant was not disabled within the meaning of the Social Security Act from the claimed disability onset date through the date of

the decision. (Rec. Doc. 9-1, p. 19-29). Claimant requested that the Appeals Council review the ALJ's decision, but the Appeals Council found no basis for review. (Rec. Doc. 9-1, p. 5). Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of judicial review. *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005). Claimant then initiated this action, seeking review of the Commissioner's decision.

## Summary of Pertinent Facts

Claimant was born on September 16, 1977. He alleges that he is disabled due to lower back problems with pain radiating into his right leg that began as early as 2007 and were exacerbated by a car accident in 2015. (Rec. Doc. 9-1, p. 47; 57-58). He was 37 years old on the alleged disability onset date and 44 years old at the time of the ALJ's decision. He completed twelve years of school in special education and received a certificate of achievement rather than a diploma. He reads and writes at a second-grade level. (Rec. Doc. 9-1, p. 39-40). He has a driver's license, but he was unable to get his CDL, because he could not pass the test due to his reading deficiencies. (Rec. Doc. 9-1, p. 43). He last worked in 2013 as a deck hand, but he stopped working at that time due to back pain. (Rec. Doc. 9-1, p. 40). He suffered from viral encephalitis as a toddler, which led to his cognitive disabilities, some limitations on his left side, and restricted motor skills. (Rec. Doc. 9-1, p. 45-46). The medical records in the record reveal the following pertinent history:

- A January 4, 2008 psychological report by Dr. Alfred Buxton, clinical psychologist, for a disability determination concluded Claimant is of borderline subaverage general intellect with commensurate adaptive daily living skill development. He was regarded as being at least marginally competent as a manger of his own personal affairs without evidence of any severe psychiatric overlay. The report noted a history of chronic low back pain with pain radiating into the right leg and that he had last worked in 2007 as an offshore laborer. He was bright enough to understand simple instruction and command but would have difficulty with more complex instruction. As long as he engaged in activities that did not aggravate his low back, then at a minimally adequate level he should be a reliable employee, able to tolerate ordinary job-related stress, and establish and maintain adequate relationships on the job. (Rec. Doc. 9-1, p. 382-84).

- An updated psychological evaluation by Nicole Lanclos, clinical psychologist, for DDS on December 28, 2015 diagnosed mild neurocognitive disorder due to encephalitis/meningitis without behavioral disturbance with borderline intellectual skills, adjustment disorder with depressed mood, left side hemiparesis, and herniated discs with back pain. Cognitive testing showed Claimant's intellectual skills to be two standard deviations below the mean with statistically significant weakness in processing speed and working memory skills. Dr. Lanclos ultimately concluded that Claimant is not capable of sustaining fulltime employment in positions that matched his abilities secondary to pain and orthopedic problems, as deferred to Claimant's physicians. She opined that it was possible that with effective medical treatment, Claimant could resume employment, and that his ability to sustain employment was not significantly impaired from a mental perspective. (Rec. Doc. 9-1, p. 387-90).

- Claimant treated with Dr. Karen Bates for chronic low back pain with radiculopathy, worsened by a car accident in 2014, and restless leg syndrome. Physical exams showed normal range of motion with normal gait. He was noted as a tobacco user and obese, and he suffered from hypertension. (Rec. Doc. 9-1, p. 439-49). During this time frame, he also went to the emergency room for low back pain radiating into the right leg, increased after a car accident in 2014. (Rec. Doc. 9-1, p. 508).

- Claimant treated with Dr. John Sledge, orthopedic surgeon, from June to November 2017. Xrays revealed almost complete loss of disc space at L5-S1 with foraminal narrowing and chronic compression fracture at L2. Physical

3

exams during that time showed no ataxia or unsteadiness of gait, with full range of motion and normal strength in spine and lower extremities, though he had painful lumbar muscles with extension. There was noted neurological findings at right L5. A lumbar MRI in August 2017 revealed degenerative disc at L5-S1 with severe disc space narrowing and Modic 2 endplate changes with moderate disc osteophyte complex causing severe bilateral foraminal stenosis and facet hypertrophy, changed at L4-5 with moderate disc space narrowing and bilateral foraminal stenosis with facet hypertrophy, slight disc bulge and facet joint effusions at L3-4, and chronic L2 superior endplate anterior wedge compression deformity. He had tried physical therapy and agreed to proceed with an epidural steroid injection at L5-S1. After the injection, he reported 30% pain relief for about 5 days before the pain returned to baseline. At the last visit in November 2017, Dr. Sledge recommended a TLIF procedure at L5-S1. (Rec. Doc. 9-1, p. 392-413).

- Medical consultant Dr. Ronald Paiton and Dr. Darlonda Harris completed a medical evaluation on November 17, 2020. The history noted Claimant was diagnosed with L5-S1 degenerative disc disease with bilateral neuroforaminal stenosis and retrolisthesis. He had been scheduled for surgery in early 2020, but the surgeon's office closed. He had a chronic compression fracture of L2 and was taking Flexeril, gabapentin, naproxen, and tramadol. The physical exam showed he had normal gait and ambulation. The straight leg raise test was positive for pain radiating from back down leg. The neurological exam was normal as were all ranges of motion. Dr. Paiton concluded that he may have limitations with prolonged sitting, standing, and walking. He stated that Claimant is able to sit, stand, and walk occasionally in an 8 hour day. He could only lift and carry 5-10 pounds on the left side. (Rec. Doc. 9-1, p. 576-83).

- Dr. Lawrence Guidry evaluated Claimant for DDS in June 2020. At the initial level, Dr. Guidry found that Claimant was not significantly limited in his ability to remember locations and work-like procedures and very short and simple instructions, and moderately limited in his ability to understand and remember detailed instructions and his ability to maintain attention and concentration for extended periods; however, Dr. Guidry noted that Claimant has intermittent depression that can interfere with concentration and pace. He was also moderately limited in his ability to respond appropriately to changes in the work setting. Dr. Guidry concluded that, although Claimant has some limitations in memory, he can comprehend, retain and carry out instructions and is expected to have the ability to make simple decisions in a work setting.

(Rec. Doc. 9-1, p. 74-95). On reconsideration, Dr. Joan Holloway agreed with Dr. Guidry's assessment. (Rec. Doc. 9-1, p. 116-31).

Claimant testified that he is able to walk and does not require an assistive device, though he does have trouble walking long distances. (Rec. Doc. 9-1, p. 38-39). He is able to attend to his daily needs, such as bathing, dressing, and washing dishes and laundry, feeding the dogs, and taking medication. (Rec. Doc. 9-1, p. 39; 49-50). He is unable to manage money because of his limited reading and math skills. (Rec. Doc. 9-1, p. 52).

The ALJ determined that Claimant was not disabled, because he was capable of performing light duty work with limitations to account for impaired intelligence and that, though he was not capable of performing past work, a significant number of qualifying jobs existed in the national economy. Claimant seeks reversal of the ALJ's findings.

## Analysis

### A. Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id*. (citations omitted).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173. A court must carefully examine the entire record but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1022. Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience. *Wren v. Sullivan*, 925 F.2d at 126.

### B.     Entitlement to Benefits

The Disability Insurance Benefit program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. See 42 U.S.C. § 423(a). See also *Smith v. Berryhill*, 139 S.Ct. 1865, 1772 (2019). Supplemental Security Income SSI provides income to individuals who meet certain income and resource requirements, have applied for benefits, and are disabled. 42 U.S.C. § 1382(a)(1) & (2). See also *Smith v. Berryhill*, 139 S.Ct. at 1772. A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his physical or mental impairment or impairments are so severe that he is unable do his previous work and considering his age, education, and work experience, cannot participate in any other kind of substantial gainful work that exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

### C.     <u>Evaluation Process and Burden of Proof</u>

A sequential five-step inquiry is used to determine whether a claimant is disabled. The Commissioner must determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work. 20 C.F.R. § 404.1520.

Before going from step three to step four, the Commissioner evaluates the claimant's residual functional capacity by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work. 20 C.F.R. § 404.1520(e).

The claimant bears the burden of proof on the first four steps; at the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy. *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v.*

8

*Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Fraga v. Bowen*, 810 F.2d at 1302. If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

    D.    **The ALJ's Findings and Conclusions**

The ALJ determined at step one that Claimant has not engaged in substantial gainful activity since May 21, 2015. (Rec. Doc. 9-1, p. 21). This finding is supported by substantial evidence in the record.

At step two, the ALJ found that Claimant has the following severe impairments: degenerative disc disease of the lumbar spine, learning disability, and borderline intellectual functioning. (Rec. Doc. 9-1, p. 3). This finding is supported by substantial evidence in the record.

At step three, the ALJ found that Claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (Rec. Doc. 9-1, p. 22-23). Claimant challenges this finding.

The ALJ found that Claimant has the residual functional capacity (RFC) to perform light duty work, except that he is limited to work with simple, routine, and

repetitive tasks with 1-2-3 step instructions in a work environment free of any fast-paced production requirements with few, if any, work place changes. (Rec. Doc. 9-1, p. 23-27). Claimant challenges this finding.

At step four, the ALJ found Claimant was unable to perform any past relevant work. (Rec. Doc. 9-1, p. 27). Claimant does not challenge this finding.

At step five, the ALJ found a significant number of qualifying jobs existed in the national economy. (Rec. Doc. 9-1, p. 27-28). Claimant challenges this finding to the extent he challenges the ALJ's RFC finding. Claimant further challenges the ALJ's finding that he has a high school education and can adjust to other work.

### E.   The Allegations of Error

Claimant alleges the ALJ erred by 1) considering Claimant as having a high school education; 2) analyzing an incorrect listing; 3) incorrectly determining his RFC; and 4) determining that he can adjust to other work. The Court shall consider the last allegations contemporaneously as challenges to the ALJ's RFC finding.

### A.   Whether the ALJ correctly considered Claimant as having a high school education.

In considering Claimant's ability to work, the ALJ found that Claimant has at least a high school education. (Rec. Doc. 9-1, p. 27). Claimant testified that he took special education class throughout school and received a certificate of achievement. (Rec. Doc. 9-1, p. 39). His school records support his testimony. (Rec. Doc. 9-1, p. 587 *et seq*).

10

The regulations establish the following categories for evaluation of a claimant's education as a vocational factor:

(1) Illiteracy. Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.

(2) Marginal education. Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education.

(3) Limited education. Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.

(4) High school education and above. High school education and above means abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above. We generally consider that someone with these educational abilities can do semi-skilled through skilled work.

20 C.F.R. § 404.1564

The ALJ found that Claimant had at least a high school education. The Court agrees that Claimant's certificate of achievement does not equate to the high school education contemplated by the regulations. See *Manuel v. U.S. Com'r of Soc. Sec.,* No. 2:11-CV-02046, 2012 WL 7004419, at *8 (W.D. La. Dec. 12, 2012), *report and recommendation adopted,* No. 2:11-CV-02046, 2013 WL 431745 (W.D. La. Feb. 1,

2013) (finding the ALJ erred in concluding that the claimant had a high school education when the evidence showed she took special education classes and received a certificate of achievement at the end of twelfth grade).

Although the Court finds that the ALJ erred in stating that Claimant possessed at least a high school education, the Court finds the error was harmless. "Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021). As further discussed below in relation to the RFC finding, the ALJ considered Claimant's limited cognitive abilities. Moreover, the ALJ questioned the vocational expert as follows:

> Q. So I'd like you to please assume **a hypothetical individual with the same age, education and work history as the claimant** with the following limitations. So let's start with light work which is lifting only 20 pounds occasionally and carrying only ten pounds frequently, standing and walking for only six hours out of eight, and sitting for six hours out of eight with normal breaks. Additionally, this individual would be limited to work which is simple, routine and repetitive with only one, two or three-stop instructions. And a work environment free of any fast-paced production requirements and involved in only simple work-related decisions with few if any work place changes. So based upon those limitations, could an individual with those limitations perform the claimant's past work?
>
> A. No, they could not.
>
> Q. And would there be, in your opinion, any other jobs in the national or regional economy such a person could perform?
>
> A. There would be that of a housekeeping-cleaner. DOT 323.687- 014. SVP of 2 at light, with approximately 133,000 positions

> in the nation. There would be that of a laundry aide. DOT 369.687-018. An SVP of 2 at light. Approximately 85,000 positions in the nation. And there would be that of a cafeteria attendant. DOT 311.677-010. An SVP of 2 at light with approximately 61,000 positions in the nation.

(Rec. Doc. 9-1, p. 64) (emphasis added).

Because the vocational expert considered an individual with Claimant's education (i.e. special education and certificate of achievement) and opined that such an individual could perform the identified jobs, the ALJ's ultimate conclusion was supported by substantial evidence, despite his statement that Claimant possessed at least a high school education. Thus, the Court finds the ALJ's error was harmless.

### B. <u>Whether the ALJ correctly evaluated the listings.</u>

In determining that Claimant did not have a listed impairment, the ALJ analyzed 20 CFR Part 404, App. 1.00 and 12.00 (mental impairments). Claimant argues the ALJ should have considered Listing 11.00 for neurological disorders and particularly 11.18 regarding traumatic brain injury. Claimant urges the Court to equate the encephalitis/meningitis he suffered as a child, which caused his cognitive issues, to brain damage as "an internal attack from viruses that injured his brain." (Rec. Doc. 11, p. 7).

Listing 11.00 governs neurological disorders that cause disorganization of motor function, bulbar and neuromuscular dysfunction, communication impairment, or a combination of limitations in physical and mental functioning. Disorganization of motor function means interference, due to the neurological disorder, with

movement of two extremities. Listing 11.00(D)(1). Claimant's evidence does not show the existence of disorganization of motor function as required to meet a listing under 11.00, including 11.18. The records show some limitations in the use of only his left arm from virus complications. The Court further notes that Claimant was previously able to work as a deckhand despite this impairment, which existed since childhood. The ALJ did not err in his listing analysis.

    C.    **<u>Whether the ALJ correctly assessed Claimant's RFC.</u>**

Claimant challenges the ALJ's RFC assessment of his ability to do light duty work with restrictions to accommodate his cognitive limitations. Similarly, in his final allegation of error, Claimant argues that he is illiterate, unable to sit for more than twenty to thirty minutes, and unable to do simple tasks on a regular and continuing basis, based on his own testimony.

A residual functional capacity assessment "is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez v. Barnhart*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1545(a)(1)).The ALJ is responsible for determining a claimant's residual functional capacity. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making a finding in that regard, the ALJ must consider all of the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the plaintiff's ability despite any physical and mental

limitations. *Martinez v. Chater*, 64 F.3d at 176. The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983). In making a residual functional capacity assessment, an ALJ must consider all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. The ALJ must consider the limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. *Giles v. Astrue*, 433 Fed. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. § 404.1545).

In evaluating Claimant's RFC, the ALJ relied upon the findings of Dr. Lanclos, who found that Claimant's ability to sustain employment was not significantly impaired from a mental perspective. Rather, as Dr. Lanclos opined, his ability to work would depend on his physical ability, as determined by appropriate physicians. (Rec. Doc. 9-1, p. 387-90). Further evaluation by Dr. Guidry and Dr. Holloway found that Claimant's mental impairments caused moderate limitations in understanding, remembering or applying information, concentrating, and adapting or managing oneself. (Rec. Doc. 9-1, p. 74-134). The ALJ acknowledged that these limitations were more limiting than initially thought, but he found that the limitations were not disabling and assessed restrictions to accommodate them.

Regarding his physical condition, the medical records show that Claimant has suffered from chronic back pain with radiating pain into his right leg, apparently caused by a compression fracture at L2. Nevertheless, his physical examinations were relatively normal, with normal gait and full strength and ranges of motion. Although surgery had been scheduled at some point and later cancelled, in December 2020, Dr. Harris opined that Claimant could stand, walk, and sit occasionally in an 8-hour workday and that lifting/carrying restrictions were limited to his left side at 5-10 pounds. (Rec. Doc. 9-1, p. 576-83).

Claimant does not challenge the ALJ's conclusions regarding his physical limitations, but, rather, he challenges the ALJ's RFC findings on the grounds of his mental capacity, arguing his own testimony showed that he is unable to read or follow instructions. Claimant offered no medical evidence countering Drs. Lanclos, Guidry, and Holloway's mental assessments. The Court finds that the ALJ properly relied upon the uncontroverted medical evidence to establish an RFC with limitations for Claimant's cognitive limitations. The Court finds that the ALJ's opinion is supported by substantial evidence in the record.

## Conclusion and Recommendation

For the foregoing reasons, this Court recommends that the Commissioner's decision be AFFIRMED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[1]

Signed in Lafayette, Louisiana, this 12th day of October, 2023.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE

---

[1] See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).